## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT

I, Julio Alicea, a Special Agent with the United States Drug Enforcement Administration hereinafter referred to as DEA being duly sworn, depose and state as follows:

## INTRODUCTION

1. I am a Special Agent of the United States Drug Enforcement Administration (DEA) and have been so employed since February 2024. I am currently assigned to Task Force III; the Transnational Investigation & Drug Enforcement (T.I.D.E.) group. As such, I am empowered under Title 21, United States Code, § 878, to enforce Title 21 and other criminal laws of the United States, to make arrests and obtain and execute search, seizure and arrest warrants. I graduated from the full-time residence "Basic Agent Training Program" in Quantico, Virginia. The Basic Agent Training Program focuses on law courses, search and seizure warrants, enforcement of federal drug laws, identification of controlled substances, surveillance, counter-surveillance, firearms training and the smuggling of drugs.

2. As a Special Agent with the DEA, I have participated in drug trafficking investigations, including investigations that have resulted in felony arrests for violations of Title 21 of the United States Code. I have participated in surveillance, in the execution of search and arrest warrants, and in the debriefing of defendants, witnesses, and others who have knowledge of the distribution and transportation of controlled substances, and of the laundering and concealing of proceeds from controlled substance trafficking.

3. Based on my training and experience and information from more experienced investigators, I am familiar with narcotics traffickers' methods (*modus operandi)* of operation including the distribution, storage, and transportation of narcotics, and the collection of money proceeds of narcotics trafficking.

4. I am also familiar with methods employed by large narcotics organizations to thwart detection by law enforcement, including the use of vague and coded language, public telephones, cellular telephone technology, counter surveillance, false or fictitious identities, utilize clothing to avoid being identified, and encoded communications.

5. Because of my personal participation in this investigation, and because of information provided to me by other agents and officers, and my personal observations, I am familiar with the facts and circumstances of this investigation. My experience in investigating drug offenders, my education, my conversations with senior agents, and my specialized training formed a basis of the opinions and conclusions set forth below which I drew from the facts set forth herein.

6. I have not set forth all the facts uncovered during this investigation in preparing this affidavit. This affidavit is intended to show merely that there is sufficient probable cause in support of a criminal complaint concerning federal felony offenses enumerated in 21 U.S.C. §§ 952 and 960(b)(1)(B)(ii) and 963 Conspiracy to Import 5 kilograms or more of a mixture or substance containing a detectable amount of cocaine a Schedule II controlled substance and 46 U.S.C. §§ 70502, 70503, 70506- Conspiracy to commit an offense against the United States, to wit: to possess with intent to distribute more than 5 kilograms of cocaine, a Schedule II controlled substance, while on board a covered vessel.

### FACTS ESTABLISHING PROBABLE CAUSE

Based on my personal participation in this investigation, discussions with other law enforcement officers, and reviews of reports generated by local and federal law enforcement officials, I learned the following:

1. On April 22, 2026, Customs and Border Protection (CBP) Air and Marine Operations (AMO) Units received information from DEA Santo Domingo Country Office in reference to a possible vessel transporting narcotics to Puerto Rico.

2. The vessel was observed by a CBP air asset approximately 90 nautical miles North of Puerto Rico at about 11AM on April 22, 2026. The CBP air asset and a Coast Guard Cutter monitored the vessel as it continued to travel towards Puerto Rico.

3. On April 23, 2026, at approximately 1:50AM, CBP AMO moved to intercept the vessel at approximately 22 nautical miles north of Puerto Rico. An air asset with video capabilities also maintained visual surveillance.

4. CBP AMO attempted to halt the vessel, however the vessel did not stop when given verbal commands and fled from CBP AMO. As CBP AMO was pursuing the vessel, officers observed, and active body camera footage and footage from the air asset showed, four males on the vessel with multiple of them throwing 6 or 7 large burlap sacks overboard. In the training and experience of the CBP AMO officers, the large burlap sacks observed being thrown overboard are commonly used by drug-trafficking organizations to transport large quantities of kilograms of cocaine. CBP AMO officers observed that the large burlap sacks thrown overboard appeared to be full. CBP AMO officers also noticed that the burlap sacks were very heavy, as they tried to pull them out of the water, but were unsuccessful, and the sacks sank. In the training and experience of the CBP AMO officers and their observations of the large burlap sacks, in total, the large burlap sacks thrown overboard contained hundreds of kilograms of cocaine.

5. The vessel was stopped by targeted gunshots by CBP AMO to the vessel's outboard engine. It was confirmed there were four males at that point. No further resistance was noted. The vessel did not maintain structural integrity after being forcibly halted, and ultimately sank.

6. The males were brought to the Homeland Security Task Force (HSTF) Antilles Office port. They were identified as Carlos Antonio Santana-Peguero, Alfredo Hernandez-Diaz, Victor Manuel Cruz-Javier, and Wilson Hernandez-Rodriguez. All of these individuals are from the Dominican Republic and do not have any legal United States residential status.

7. All four males were interviewed by members of T.I.D.E. All four males admitted to knowing they were traveling from Sabana De La Mar, Dominican Republic to Puerto Rico. All four males also admitted to seeing the burlap sacks in the vessel. Additionally, Wilson Hernandez-Rodriguez and Victor Manuel Cruz-Javier, admitted to knowing they were transporting cocaine. Carlos Antonio Santana-Peguero provided that, while he was unsure, he imagined the burlap sacks contained cocaine.

## CONCLUSION

8. Based upon my training, experience, and my participation in this investigation, I respectfully believe that sufficient probable cause exists to show that there is present material evidence of a commission of a violation of a Federal Law to wit: 21 U.S.C. §§ 952(a), 960(b)(1)(B), and 963, conspiracy to import 5 kilograms or more of cocaine.

I hereby declare, under penalty of perjury, that the foregoing is true and correct to the best of my knowledge.

**JULIO ALICEA** Digitally signed by JULIO ALICEA
Date: 2026.04.23 18:44:05 -04'00'

Julio Alicea
Special Agent
Drug Enforcement Administration

Sworn in accordance with the requirements of FRCP 4.1 at _9:16 am_ by telephone, this _24th_ day of April 2026

**Honorable Giselle Lopez-Soler**
US Magistrate Judge
District of Puerto Rico
San Juan, Puerto Rico